```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

UNITED STATES OF AMERICA        :

      v.                          :   Criminal Case No. DKC 23-390

MEHUL RAMESH KHATIWALA,         :
et al.                          :

**MEMORANDUM OPINION**

**I.   Background**

    Mehul Khatiwala and four others were indicted on November 2, 2023, by a Grand Jury sitting in the Northern Division of the United States District Court for the District of Maryland. At the time of the return of the indictment, the Assistant United States Attorney advised the Criminal Assignments Section of the Clerk's Office in a written memorandum that the case "is related" to an earlier case against Mr. Khatiwala, *United States v. Khatiwala*, DKC 19-145, reciting that both cases involve fraudulent application for SBA loans by the defendant using straw owners. The memorandum set forth the status of the earlier case and how the Government viewed the relationship of the two cases. The earlier case had been randomly assigned to this member of the bench.[1]  The clerk alerted my chambers of the related case memo,

---

[1] Although my chambers are in the Southern Division, I have been taking cases, mostly criminal, from the Northern Division for several years to help with an imbalance in caseload between the divisions. Although Defendants initially raised an objection to assignment to the Southern Division, after understanding that the

and inquired if I would accept the new case assignment.  I reviewed the related case memo and indicated to my staff that it was okay to assign the new case to me.  After receiving my reply, the case was instituted in CM/ECF.  The memo from the U.S. Attorney as well as the communications between the clerk's office and my chambers were not filed in the court file.

Title 28, U.S.C. § 137 provides:

> The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.
>
> The chief judge of the district court shall be responsible for the observance of such rules and orders, and shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe.
>
> If the district judges in any district are unable to agree upon the adoption of rules or orders for that purpose the judicial council of the circuit shall make the necessary orders.

The court uses the CM/ECF system to assign cases randomly among those judges eligible to take a particular kind of case.  As is routinely recognized, however, "[j]udicial economy is best served when related or consolidated cases are handled by the same judge."  District Clerk's Manual, § 4.04.c.1.[2]  In Maryland, for criminal cases, the court relies on the United States Attorney to

---

case remains a Northern Division case, they have withdrawn that objection.  ECF No. 102, n.2.

[2] The pertinent section from the Manual is set forth in an appendix.

notify the clerk when it asserts that a new case is related to an earlier filed case. In civil cases, the responsibility falls initially on counsel for both parties.[3] In a criminal case, as noted above, the clerk's office notifies the judge's chambers if the United States Attorney asserts that a newly filed criminal

---

[3] Local Rule 103(b) is applicable to civil cases:

b. Related Cases

i) Designation by Plaintiff. If counsel for a plaintiff in a civil action believes that the action being filed and one (1) or more other civil actions or proceedings previously decided or pending in this Court (1) arise from the same or identical transactions, happenings, or events; (2) involve the identical parties or property; (3) involve the same patent or trademark; or (4) for any other reason would entail substantial duplication of labor if heard by different judges, counsel shall indicate that fact by designating the case as a "related case" on the civil cover sheet. A copy of the cover sheet shall be served on all parties.

ii) Designation by Defendant. If counsel for a defendant believes that a case is related to a prior case and that fact has not been noted on the civil cover sheet by plaintiff, counsel for the defendant shall bring that information to the attention of all parties and the Clerk, and the Clerk shall note it on the cover sheet and inform the judge to whom the new case has been assigned.

iii) Resolution of Disputes. Any disputes regarding the designation of a case as being related to another case shall be presented by motion to the judge to whom the new or later case has been assigned.

case is related to an earlier one already assigned to that judge and that judge decides whether it can be directly assigned or not.

**II.  Motion to Unrelate Indictment and Refer to Clerk's Office for Random Assignment**

Defendants object to the "related case" designation and move to have it rescinded and to have the case reassigned randomly. They argue that there is no local rule to overcome the general rule of random assignment, that due process requires the court to avoid even the appearance of lack of impartiality, and that this case is not properly related to the earlier case in any event. (ECF Nos. 79, 82, 83, 84, and 85).  The Government responds that the court has broad plenary authority to adopt policies for assignment of cases, that Defendants lack standing to challenge the assignment directly, that their due process rights were not abridged, and that the two cases are properly designated as related.  (ECF Nos. 93 and 95).  In Defendants' reply, they reiterate their due process and "unrelatedness" arguments.  (ECF No. 102).  For the following reasons, the motion will be denied.

**III. Analysis**

The Government's related case memorandum recited the following:

> Both cases involve the fraudulent application for SBA loans by Khatiwala using straw owners. In the previous case, Khatiwala pled guilty before Judge Chasanow and was sentenced on April 29, 2021. At the sentencing hearing, Judge Chasanow ruled that Khatiwala had obstructed justice by concealing from the Court dozens of bank accounts that he had

4

>     opened and controlled but failed to disclose
>     to U.S. Probation during his presentence
>     interview.  In addition to charging a similar
>     bank fraud scheme for which Khatiwala was
>     previously convicted by the Court, the current
>     case relates to the information Khatiwala
>     allegedly withheld from the Court.

The scheme and conspiracy in the first case occurred from February 2011 until January 2014, and involved an agreement to defraud Cecil Bank, the Small Business Administration, and other financial institutions, through the misrepresentation of material facts during the loan underwriting and approval process for the purchase of hotels and condominium units.  Some of the misrepresentations involved falsified documents and straw borrowers.  Mr. Khatiwala pled guilty via a plea agreement on April 25, 2019.  Sentencing was postponed several times before the COVID pandemic caused an even longer delay.  Prior to the eventual sentencing date, the government contended that Mr. Khatiwala had breached the plea agreement by concealing material financial information.  It sought to be relieved of its obligations as to guideline stipulations under the plea agreement because, it alleged, Mr. Khatiwala failed to disclose "material information about his financial resources" to the probation officer.  (ECF No. 48).  After full briefing and oral presentations at sentencing, the court found that Mr. Khatiwala provided false information to the probation office that was material, constituting willful obstruction or impeding the administration of justice and resulting in a two-level upward enhancement under 3C1.1 of the

5

guidelines. The court stopped short, however, of finding fraud in "the pattern of financial shenanigans . . . that continue[d] with regard to the LLCs, the operating agreements, [and] the relationship with banks." (ECF No. 78, at 91).

He is now charged with fraud based, in part, on the material presented at the earlier sentencing. The current indictment alleges a scheme and conspiracy from August 2018 until February 2020, involving "false documentation in support of SBA loan applications for the purchase of hotels that misrepresented the identity of the sellers, the familial relationships between the parties, and the nature and amount of the equity injected by the borrowers to obtain financing." This alleged conduct occurred, at least in part, while Mr. Khatiwala was being prosecuted in the first case.

**A. Lack of Local Rule**

The absence of a local rule or standing order, by itself, does not negate the court's authority to assign cases to individual judges. The court's long-standing practice of random assignment, using the CM/ECF system and making adjustments for various reasons including relationship to an earlier case, under the auspices of the chief judge, is permissible under the statute.[4] See, *United States v. Osum*, 943 F.2d 1394, 1400-01 & n.3 (5th Cir. 1991) (noting

---

[4] The undersigned advised the court's Rules and Forms Committee when this motion was filed. If that committee recommends adoption of a local rule and the bench proposes to adopt the rule, it will be published for comment prior to formal adoption.

6

the absence of a local rule for random assignment but remarking that any local rule would serve internal housekeeping purposes and would not create rights enforceable by litigants).

### B. Due Process: Avoiding appearance of lack of impartiality

Defendants contend that allowing the prosecutor to "cause" this case to be assigned directly creates an appearance of lack of impartiality.  Most courts have held that "in order to establish a due process violation for prosecutorial judge-shopping, a defendant must demonstrate that he has been actually prejudiced by the assignment of a particular judge to his case."  *United States v. Pearson*, 203 F.3d 1243, 1258 (10th Cir. 2000).  Among the cases cited is *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984).  The Sixth Circuit recently reviewed the applicable case law:

> [N]o court has ever held that prosecutorial "judge shopping"—without more—is a per se violation of a defendant's due-process rights. *See Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004) (holding that "no federal court has held that prosecutorial judge shopping is a per se basis for habeas relief" and collecting cases); *United States v. Pearson*, 203 F.3d 1243, 1266 (10th Cir. 2000) (noting "that a certain type of judge-shopping inheres in our federalist system" and that the most important question was simply whether the judge assigned was impartial); *Tyson v. Trigg*, 50 F.3d 436, 442 (7th Cir. 1995) (holding that allowing a prosecutor to choose the trial judge, even if it "lack[s] the appearance of impartiality" is not enough to grant a new trial).

*United States v. Ashrafkhan*, 821 F. App'x 428, 437-38 (6th Cir. 2020).  The court then reviewed its earlier cases:

7

We have also spoken on this issue, although briefly, in two cases. In *Sinito v. United States*, 750 F.2d 512 (6th Cir. 1984), the defendant claimed that he was entitled to a new trial because his case had been "steered" to a particular judge. The judge was assigned according to the local rules of the Northern District of Ohio at the time, which had a case-assignment plan that allowed a "district court judge sitting in Akron [to] exchange a non-Akron case initially assigned to him for an Akron case of the same category initially assigned to a judge sitting in Cleveland, thus facilitating the hearing of Akron cases by a judge in Akron and non-Akron cases by a judge sitting in Cleveland." *Id.* at 514 n.3. Sinito's case had been randomly assigned to a Cleveland-based judge, but pursuant to the case-assignment plan, it was reassigned to an Akron-based judge, Judge Manos. Sinito argued that a clerical error in a previously filed case resulted in Judge Manos being assigned rather than a different Akron judge.

We ultimately rejected Sinito's claim, holding that "[e]ven when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice." *Id.* at 515 (emphasis added). This is because the rules "governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants." *Ibid.* As such, a defendant alleging an improper judge assignment must claim that the assigned judge was prejudicial. Sinito never claimed any prejudice by his trial judge, and so we affirmed his conviction. *Id.* at 516. One year after *Sinito*, we evaluated another allegation of prosecutorial judge steering in United *States v. Gallo*, 763 F.2d 1504 (6th Cir. 1985). Gallo was a co-defendant of Sinito's, and he made the same argument on appeal. Our disposition of the issue was the same, and we cited *Sinito* approvingly for the proposition

8

> that "a pattern of 'steering' significant criminal cases to a judge of [the prosecution's] choice" does not implicate any due process concerns unless the defendant can raise a particular claim of impartiality to the specific trial judge assigned. *Id*. at 1532.

*Id*. This analysis applies when a defendant challenges a "related case" direct assignment:

> Although Defendant does not allege that the "related case" designation, and this case's assignment to the undersigned, violates his Due Process rights, the Court notes that any such argument has been rejected by a number of District and Circuit Courts. As noted by the Seventh Circuit:
>
>> A non-randomly assigned judge, without more, simply does not make for a due process violation. . . . The Fifth Amendment's due process clause guarantees the right to an impartial decisionmaker, *e.g., Concrete Pipe & Prods, of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 617, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), but not to a particular judge, *United States v. Braasch*, 505 F.2d 139, 147 (7th Cir. 1974). And in *United States v. Keane*, 522 F.2d 534, 557 (7th Cir. 1975), we adopted the reasoning of a district court which ruled that an individual does not have a due-process right to a randomly assigned judge. *See United States v. Keane,* 375 F.Supp. 1201, 1204 (N.D. Ill. 1974). In *Tyson v. Trigg*, 50 F.3d 436, 439-42 (7th Cir. 1995), we upheld the constitutionality of a case assignment system that permitted prosecutors to play an active role in selecting trial judges, although we described the system as "unsightly." Other courts to have

9

>> considered the question agree that due process does not demand random assignment of judges. *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) (assignments need not be random and can be made for any reason, so long as it is not made in a biased manner "or [with] the desire to influence the outcome of the proceedings"); *United States v. Osum*, 943 F.2d 1394, 1400-1401 & n.3 (5th Cir. 1991) (suggesting that no enforceable right prevents a court from ignoring local rules in an effort to steer a case to a given judge); *see also* 28 U.S.C. § 137 (leaving it to individual courts to determine how they divide their business); 28 U.S.C. § 1407(a), (b) (assignment to particular judges by the panel on multidistrict litigation); *Bd. of Sch. Dirs. of the City of Milwaukee v. State of Wisconsin*, 102 F.R.D. 596, 598 (E.D.Wis. 1984) (related pending cases may be transferred to a single judge); *United States v. Isaacs*, 493 F.2d 1124, 1168 (7th Cir. 1974) (panel of non-Seventh Circuit judges constituted by the Chief Justice of the United States after mass recusal).

*Firishchak v. Holder*, 636 F.3d 305, 309-310 (7th Cir. 2011). *See also, United States v. Forbes*, 150 F.Supp.2d 672, 681 (D.N.J. 2001) ("The Court has reviewed the cases cited by Forbes in support of the contention that his Due Process rights are implicated by the government's alleged involvement in the assignment of this matter and concludes that Forbes has made no showing of any harm to his Due Process rights.  The cases which discuss this issue overwhelmingly conclude that due process concerns are not implicated by the assignment of judges in a criminal matter unless the criminal defendant can point to some specific prejudice.").

10

*United States v. Helring*, No. 3:23-CR-301, 2024 WL 218119, at *3 (M.D.Pa. Jan. 19, 2024).  Here, Defendants do not allege any specific prejudice.

It is correct, at some level, that random assignment promotes confidence in the judicial system.  This court employs just such a system.  But there can be countervailing policies that, at times, override that principle:

> Finally, the Court notes Defendant's statement that the "policy of random assignment of cases is credited across the country with fostering 'greater public confidence in the integrity of the judicial process, guarantee[s of] fair and equal distribution of cases to all judges, avoid[ance of] public perception or appearance of favoritism in assignments, and reduc[tion of] opportunities for judge shopping." (Doc. 7, at 1) (*quoting Comm, on Judiciary v. McGahn*, 391 F.Supp.3d 116, 118 (D.D.C. 2019)). Preliminarily, this statement was made by the District Court of Columbia when commenting on the purpose of its own "general rule" and citing to its own Local Rules of civil procedure.  Nonetheless, even accepting the important principles which generally favor the random assignment of cases, Defendant has not provided any explanation as to how the assignment of the present action to the undersigned conflicts with the D.C. District Court's stated purposes for the random assignment of cases.  As noted, Helring does not contend that he is prejudiced by the assignment of this case to the undersigned or that there was any "favoritism" in the assignment of this case, nor is there any issue as to the fair and even distribution of cases within the Middle District of Pennsylvania.  Rather, the above-captioned action and Vaughn are related cases and share a common core of operative facts arising out of the same criminal investigation and

11

> involving the same criminal charges. Helring's undeveloped policy arguments are therefore misplaced in the present action.

*United States v. Helring*, No. 3:23-CR-301, 2024 WL 218119, at *4 (M.D.Pa. Jan. 19, 2024). The original Khatiwala case was assigned to me via the random assignment system. The Government's memorandum, alerting the clerk's office that Mr. Khatiwala had recently been prosecuted in another case is not "judge shopping." The decision whether to allow direct assignment as a "related" case was made by the court. Indeed, the relatedness of the cases might have been noticed by the clerk's office even without the Government's communication, prompting further inquiry prior to assignment.

**C. Not related**

The "relatedness" of the two cases is obvious. Mr. Khatiwala, the only defendant in the first case, is the first named defendant in this case. The others have not previously been charged in this district. While the first case is completed, Mr. Khatiwala is still serving the sentence imposed and then will have a term of supervised release to follow.[5] The court learned, during the first

---

[5] Other courts similarly discount any difference in relatedness due to the open or closed status of the earlier case. *See United States v. Helring*, No. 3:23-CR-301, 2024 WL 218119, at *2, n.2 (M.D.Pa. Jan. 19, 2024). It is typical to assign a new criminal case to the same judge who handled an earlier case, particularly if the new charge might constitute a violation of supervised release in the earlier case. Mr. Khatiwala was not yet

12

case, of some of the financial matters which are involved in this case, and much of the sentencing hearing was devoted to those discussions.  If—a big if-Mr. Khatiwala is convicted in this case, the sentencing court will take into consideration the earlier case and he might eventually be on supervised release in both cases at the same time.  It, frankly, is not a close case.  The second case is related to the first in ways that make it logical for it to be assigned to the same judge.

### IV. Conclusion

Accordingly, the motion will be denied.  A separate order will be entered.

                                            /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge

---

on supervised release at the time of this alleged criminal conduct, as discussed above.